## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAMELA ROONEY and PATRICK ROONEY**<br>            **Plaintiffs,** | **CIVIL NO.: 2:22-cv-00716** |
| **VERSUS** | **JUDGE: MARY ANN VIAL LEMMON** |
| **UNILEVER UNITED STATES INCORPORATED**<br>            **Defendant** | **MAG: DONNA PHILLIPS CURRAULT** |

### MEMORANDUM IN SUPPORT OF UNILEVER'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

This Court should dismiss Plaintiffs' Complaint against Unilever United States Inc. ("Unilever"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, because the Complaint fails to adequately plead facts to establish standing to bring this suit. Specifically, Plaintiffs fail to plead facts that plausibly demonstrate that the injury in fact, Mrs. Rooney's breast cancer, is fairly traceable to Unilever's conduct. As such, the Complaint should be dismissed for lack of standing. Alternatively, and only to the extent this Court finds that Plaintiffs have standing, the Court should dismiss all of Plaintiffs' claims which fall outside the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 *et seq.*, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the LPLA provides the exclusive theories of liability for suit against a manufacturer for damages arising from the use of its product.

I.  BACKGROUND

Plaintiffs filed suit in the Eastern District of Louisiana on March 18, 2022.[1] In their Complaint, Plaintiffs generally allege that Mrs. Rooney developed breast cancer as a result of exposure to benzene.[2] Plaintiffs claim this exposure originated from her use of Suave 24-Hour Protection Powder Aerosol Antiperspirant ("Suave antiperspirant"), a product Mrs. Rooney claims to have used "exclusively"[3] for more than 10 years.[4]

However, Plaintiffs plead no facts showing that the products they purchased actually contained benzene. Instead, the Complaint cites a citizen petition submitted to the FDA by online pharmacy Valisure that included testing results on certain body spray products. Valisure's testing results indicated that, although many of the 108 batches tested (including some batches of Suave) contained no detectible benzene, about half (including four lots of Suave) purportedly contained trace amounts.[5] Critically, Plaintiffs do not allege that the products they purchased came from any of the batches Valisure tested. Nor do they allege testing of the products they purchased or any other facts to establish that those products *actually* contained benzene.[6]

Plaintiffs also fail to assert facts that the level of benzene exposure that might have occurred from whatever alleged benzene contamination might have existed in the Suave *actually*

---

[1] *See* R. Doc. 1.
[2] *Id.* at p. 1.
[3] *Id.*; Plaintiffs allege that Mrs. Rooney "exclusively" used Suave antiperspirant, however, Plaintiffs have filed a nearly identical suit in this court against Proctor & Gamble alleging that Mrs. Rooney also used Proctor & Gamble's aerosol antiperspirant product. *See* Exhibit A, Plaintiffs' Complaint in *Rooney v. The Proctor & Gamble Company*, No. 2:22-cv-01164, E.D. La., filed on April 28, 2022.
[4] R. Doc. 1, p. 1.
[5] *Id* at ¶24, fn. 4
[6] R. Doc. 1, ¶¶ 8-11, 24-26. Recently, an internal review by Unilever showed that some product samples of Suave 24- Hour Protection Powder and Suave 24-Hour Protection Fresh showed slightly elevated levels of benzene coming from the propellant that sprayed the products out of the can. While an independent health hazard evaluation determined that daily exposure to benzene from the products at the levels detected in the testing would not be expected to cause adverse health consequences, Unilever nevertheless voluntarily recalled these products from the U.S. market on March 30, 2022. *See* https://www.unileverusa.com/news/press-releases/2022/unilever-issues-voluntary-nationwide-recall-of-suave-24hour/ (last accessed May 18, 2022).

used by Mrs. Rooney, is capable of posing any risk to human health. Stated another way, there are no facts contained in the Complaint that plausibly link exposure from trace amounts of benzene in underarm deodorant to the development of breast cancer in humans.

## II. LAW AND ARGUMENT

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 812 (W.D. La. 2003) (Melancon, J.). When the standing of a plaintiff is challenged, the defendant necessarily challenges the jurisdiction of the court to hear the case as, without standing, there is no case or controversy between the parties to serve as the basis for the exercise of judicial power. *Id.* at 813; *see also Apalachicola Riverkeeper v. Taylor Energy Co. LLC*, 2013 WL 1897142, *3 (E.D. La. May 4, 2013) (Morgan, J.); *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). To survive a 12(b)(1) motion to dismiss for lack of standing, a plaintiff must establish that they have (1) suffered an injury in fact, (2) the injury is fairly traceable to the defendant's conduct, and (3) the plaintiff's injury is redressable by a favorable ruling. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-611 (1992). A plaintiff must plead facts demonstrating each element of standing. *Warth* 422 U.S. at 518; *see, e.g., Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 528 (S.D. NY 2018). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction… Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. U.S.*, 281 F. 3d 158, 161 (5th Cir. 2001) (internal citations omitted). If a plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed. *Warth*, 422 U.S. at 501.

### a. Plaintiffs fail to adequately plead facts sufficient to establish their injury is fairly traceable to Unilever's conduct.

Plaintiffs bear the burden of proving that Mrs. Rooney's alleged injury, triple negative breast cancer, is fairly traceable to Unilever's conduct, *i.e.* fairly traceable to the alleged trace

amounts of benzene in some lots of its Suave antiperspirant. However, Plaintiffs' Complaint fails to establish any facts which connect Mrs. Rooney's injury to Suave antiperspirant. Although Plaintiffs' make conclusory allegations that Mrs. Rooney used Suave antiperspirant and later developed breast cancer, she offers no allegations or evidence that the products Mrs. Rooney used *actually contained* benzene. This cannot satisfy the pleading standards for standing. Plaintiffs *must* plead facts which demonstrate each element of standing, including facts which connect Mrs. Rooney's cancer to Unilever's conduct. Plaintiffs did not do so.

In *Schloegel v. Edgewell Personal Care Co., et al.,* the court ruled that a plaintiff did not adequately allege facts sufficient to support a finding of standing. No. 4:21-CV-00631-DGK, 2022 WL 808694, at *2–3 (W.D. Mo. Mar. 16, 2022). There, the plaintiff alleged that she purchased sunscreen products in which trace amounts of benzene were detected in only some tests of only some of the sunscreen products tested by Valisure. *Id.* at *2. However, the plaintiff did not allege that the *specific* sunscreen products she *actually* purchased contained benzene. *Id.* at *2-3. The court dismissed the entire complaint because it found the plaintiff lacked standing. *Id.* at *3.

The Eight Circuit's decision in *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) is also instructive. There, the Court affirmed dismissal of plaintiffs' claims alleging that some, but not all, kosher beef sold by defendants was not, in fact, kosher, because plaintiffs' "allegations fail[ed] to show that any of the particular packages of . . . beef they personally purchased contained non-kosher beef." *Id.* at 1028, 1030. The Court reasoned that "[i]n the context of defective products, 'it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, ***the plaintiffs must allege***

***that their product actually exhibited the alleged defect***.'" *Id. citing In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir.2011) (emphasis added).[7]

The same result should be found here. By relying on the Valisure testing, Plaintiffs have only vaguely alleged that *some* tests on *some* lots of Suave antiperspirant showed trace amounts of benzene. Plaintiffs did not allege that any of the specific Suave antiperspirant products that Mrs. Rooney allegedly purchased contained benzene. In fact, the Valisure testing cited in Plaintiffs' Complaint shows that nearly half of the batches analyzed contained no detectible benzene.[8] The Complaint fails to identify the batch or lot numbers of the specific Suave products Plaintiffs purchased, fails to plausibly allege that the Suave products Plaintiffs purchased were tested for or actually contained any benzene, and therefore fails to plausibly allege that Mrs. Rooney was actually exposed to benzene. Plaintiffs only allege that Mrs. Rooney used Suave antiperspirant and later developed cancer. Plaintiffs make no allegations that any of the specific Suave antiperspirant products she allegedly used came from those same lots in which trace amounts of benzene were detected in the tests performed by Valisure. Plaintiffs make no allegations that they personally performed benzene tests on any of the Suave antiperspirant Mrs. Rooney used. Plaintiffs allege no facts that connect Mrs. Rooney's cancer to any Suave antiperspirant products actually containing benzene.

Without allegations that the products used by Mrs. Rooney actually contained benzene, Plaintiffs injuries are not "fairly traceable" to Unilever's conduct. There are no factual allegations connecting Mrs. Rooney's alleged exposure to benzene to any specific Unilever product she used.

---

[7] *See also Gaminde v. Lang Pharma Nutrition, Inc.*, No. 118CV300GLSDEP, 2019 WL 1338724, at *1–3 (N.D.N.Y. Mar. 25, 2019) (dismissing for lack of standing plaintiffs' claim that the Krill Oil he purchased contained less than the represented about of Krill Oil, based upon a study of other bottles of the product, finding that plaintiff's "failure to allege that he tested his bottle of [the product] – indeed, his failure to make any allegation regarding how he knows that it was mislabeled – is fatal").
[8] Rec Doc. 1 at ¶24, fn. 4

Consequently, Plaintiffs have failed to establish standing in this case and the Complaint should be dismissed.

### b. Plaintiffs fail to adequately plead facts sufficient to plausibly demonstrate that exposure to trace amounts of benzene can produce breast cancer in humans.

Even if Plaintiffs sufficiently alleged that the Suave products used by Mrs. Rooney actually contained trace amounts of benzene based on the Valisure testing, Plaintiffs still must put forth allegations that plausibly connect the defendant's conduct to their alleged injury. This means that Plaintiffs must allege – that it is plausible – that exposure to the trace amounts of benzene referenced in their Complaint is capable of causing breast cancer in humans. As explained by the United States Supreme Court in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the "irreducible constitutional minimum of standing" requires a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." This requires that the "plaintiffs [] provide factual support" and do more than offer "labels and conclusions" to assert an injury-in-fact. *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1052 (N.D. Cal. 2015) *citing Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 955 n. 9 (9th Cir. 2011).

The Court's decision in *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045 (N.D. Cal. 2015) is on point. In that case, Plaintiffs alleged that certain Pepsi products contained a carcinogen, 4–methylimidazole ("4–MeI"). *Id.* at 1049. The plaintiffs sought, *inter alia*, damages associated with the risk of developing bronchioloalveolar cancer based on their "every day" use of Pepsi products. *Id.* at 1049-50. The court determined that the plaintiffs "failed to establish standing, because they ha[d] not established that the alleged risk of bronchioloalveolar cancer … is both ***credible and substantial***." *Id.* at 1053 (emphasis added). The Court went on to conclude that the allegations in

"the complaint (and studies incorporated therein) are speculative….[because] the Riva Plaintiffs have alleged that mice experience increased risk of harm of a specific form of lung cancer at very high exposures to 4–MeI; but they have not alleged facts to show that *humans* experience the same increased risk, particularly at the exposures alleged." *Id.* (emphasis original). Essentially, the "Riva Plaintiffs … effectively invited the Court to engage in an 'ingenious academic exercise in the conceivable to explain how defendants' actions caused their injury.'" *Id. citing Maya*, 658 F.3d at 1068 (citation omitted). The court determined the plaintiffs' allegations were "not sufficient to establish" standing. *Id.*

The same result is warranted here. Plaintiffs do not allege that exposure to the trace amounts of benzene found in the Valisure testing is capable of producing triple negative breast cancer in humans. Plaintiffs include no citations or references to medical or scientific evidence suggesting that it is even plausible. For example, in Paragraph 31 of their Complaint, Plaintiffs allege that benzene is carcinogenic to humans and cite a webpage from the World Health Organization ("WHO"). This webpage, however, appears to be related to "water sanitation" and no longer exists:



Plaintiffs make no allegation that the WHO citation supports the proposition that benzene at the trace amounts referenced in their Complaint is capable of causing cancer generally, nor do they claim that Plaintiff's specific type of cancer – triple negative breast cancer – has been associated with benzene exposure.

The only other citation in Plaintiff's complaint related to the "carcinogenic properties of benzene" is found in paragraphs 27-28 which is a citation to a webpage of the Centers for Disease Control and Prevention ("CDC").  However, this citation merely states that "***long term*** exposure to ***high levels*** of benzene can cause ***leukemia***…"[9]  There is no reference on the CDC's webpage that supports the proposition that the carcinogenic effects of benzene exist at the trace amounts referenced in their Complaint, nor does it lend factual support for the allegation that Mrs. Rooney's specific type of cancer – triple negative breast cancer – has been associated with benzene exposure. While the Plaintiffs allege in Paragraph 12 that this has been "well documented" they cite no actual documentation in their allegations.  Instead, they make the very type of "labels and conclusions" that are insufficient to establish standing.

Like the plaintiffs in *Riva,* Plaintiffs here have failed to make allegations containing "factual support" that Mrs. Rooney's triple negative breast cancer is fairly traceable to Unilever's product.  Without support, their claims are not "credible and substantial."  Instead, they invite the Court to engage in the "academic exercise in the conceivable to explain how defendants' actions caused their injury" which is insufficient to establish standing. *Riva,* 82 F. Supp. 3d at 1053.

Because Plaintiffs have not, and cannot, allege that the product used by Mrs. Rooney actually contained benzene, and because Plaintiffs have not, and cannot, allege that exposure to

---

[9] Rec. Doc. No. 1 at ¶28.  The American Cancer Society also suggests that benzene is associated with cancers of the blood, specifically leukemia and its derivatives, but specifically notes that ***"[t]here is much less evidence linking benzene to any other types of cancer."***  "Benzene and Cancer Risk," American Cancer Society; https://www.cancer.org/cancer/cancer-causes/chemicals/benzene.html (last accessed 5/11/2022) (emphasis added).

trace amounts of benzene in the amounts referenced in their Complaint is capable of causing Mrs. Rooney's breast cancer, Plaintiffs have failed to establish standing and their case should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### c. All non-LPLA claims must be dismissed with prejudice.

Alternatively, and only if the Court finds that Plaintiffs have standing, the Court should still dismiss Plaintiffs' claims that fall outside of the Louisiana Products Liability Act ("LPLA") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." *Kennedy v. Pfizer, Inc.*, No. CIV.A. 12-01858, 2013 WL 4590331, at *2 (W.D. La. Aug. 28, 2013). When a plaintiff brings suit against a manufacturer in their capacity as a manufacturer of a product, the LPLA provides the *exclusive* theories of liability. *Id.* see also LA. REV. STAT. § 9:2800.52. When a litigant asserts claims that fall outside of the LPLA, those claims should be dismissed pursuant to Rule 12(b)(6) because in Louisiana those are claims for which relief cannot be granted. *Kennedy,* supra; s*ee also, e.g., Scianneaux v. St. Jude Medical S.C., Inc.*, 961 F.Supp.2d 808, 811 (E.D. La. 2013); *Jefferson v. Lead Indus. Ass'n, Inc.,* 930 F.Supp. 241, 245 (E.D. La. 1996) *aff'd,* 106 F.3d 1245 (5th Cir.1997); *Automatique New Orleans, Inc. v. U–Select–It, Inc.,* 1995 WL 491151, *3 n. 2 (E.D. La. Aug. 15, 1995); *Hopkins v. NCR Corp.,* 1994 WL 757510, *1–2 (M.D. La. Nov. 17, 1994).

In this case, Plaintiffs appear to assert the following three claims:

1. Product Adulteration under 21 U.S.C. § 351(a)(1) (R. Doc. 1, ¶¶ 33-38);

2. Misleading and Deceptive Advertising (R. Doc. 1, ¶¶ 39-41);

3. Inadequate Warning under La. Rev. Stat. § 9:2800.57. (R. Doc. 1, ¶¶ 42-50).

The LPLA provides four theories of recovery for a plaintiff claiming to have been injured by a manufacturer's product: (1) defective composition; (2) defective design; (3) inadequate warning; and (4) breach of an express warranty. The LPLA specifically states that "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory not set forth in the LPLA." La. R.S. 9:2800.52. "Based on this unequivocal statutory language, courts routinely dismiss claims against manufacturers that do not arise under the LPLA." *Lacey v. Bayer Corp.*, No. CIV.A. 02-1007, 2002 WL 1058890, at *2 (E.D. La. May 24, 2002); *Jefferson v. Lead Industries*, 106 F.3d 1245, 1251 (5th Cir. 1997) (affirming dismissal of plaintiff's claims of negligence, ***fraud by misrepresentation***, market share liability, breach of implied warranty of fitness, and civil conspiracy due to exclusivity of the LPLA); *Brown v. R.J. Reynolds Tobacco Co.*, 852 F.Supp. 8,9 (E.D.La.1994), aff'd, 52 F.3d 524 (5th Cir. 1995) (dismissing plaintiff's claims for ***fraudulent misrepresentation***, concealment, and conspiracy due to LPLA's exclusivity); *Grenier v. Medical Engineering Corp.*, 99 F.Supp.2d 759, 765–63 (W.D. La. 2000), aff'd, 243 F.3d 200 (5th Cir. 2001) (holding that plaintiff's claims for strict liability, negligence, breach of warranty of fitness for particular purpose, breach of implied warranty, misrepresentation, fraud by concealment, ***false advertising***, negligent infliction of emotional distress, common plan to prevent public awareness of breast implant hazards, and future product failure were not cognizable under the LPLA); Lacey v. Bayer Corp., No. CIV.A. 02-1007, 2002 WL 1058890, at *2 (E.D. La. May 24, 2002); *Rickett v. Watson Lab'ys, Inc.*, No. CV 06-361-C-M2, 2006 WL 8432783, at *1 (M.D. La. Aug. 8, 2006), report and recommendation adopted, No. CV 06-361-C, 2006 WL 8432782 (M.D. La. Sept. 6, 2006) (dismissing Plaintiffs claims of negligence; fraud and misrepresentation; and ***adulteration and/or misbranding.***).

The only claim advanced in the Complaint that falls within the scope of the LPLA is inadequate warning. Plaintiffs' other claims must be dismissed with prejudice.

### III. CONCLUSION

In conclusion, Plaintiffs' Complaint should be dismissed for lack of standing pursuant to Rule 12(b)(1). Plaintiffs failed to plead facts which demonstrate the alleged injury is fairly traceable to Unilever's product. Alternatively, if the Court finds that Plaintiffs adequately allege sufficient facts to meet the standing requirements, the Court *must* dismiss all of Plaintiffs' claims except the LPLA inadequate warning claim pursuant to Rule 12(b)(6); the LPLA provides the exclusive theories of liability against a manufacturer for alleged damages caused by its product in Louisiana.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

By: */s/ Douglas Moore*
Douglas J. Moore (La. Bar #27706)
Mary P. Britton (La. Bar #36812)
Connor W. Peth (La. Bar #39499)
400 Poydras Street, Suite 2700
New Orleans, LA 70130
Telephone: (504)310-2100
Facsimile: (504)310-2101

-and-

SHOOK, HARDY & BACON L.L.P.

James P. Muehlberger (Mo. Bar #8106)
(*Pro Hac Vice* forthcoming)
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Unilever United States Incorporated*

## **CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that a copy of the foregoing has been served on all known counsel of record through the Court's CM/ECF system on this the 6th day of June, 2022.

                 */s/ Douglas Moore*