UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAMELA ROONEY AND PATRICK ROONEY | CIVIL ACTION |
| VERSUS | NO: 22-716 |
| UNILVER UNITED STATES, INC. | SECTION: "S" (2) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Second Amended and Supplemental Complaint** (Rec. Doc. 25) filed by defendant Unilever United States, Inc. ("Unilever") is **GRANTED**, and plaintiff's claims are hereby **DISMISSED** with prejudice.

I. BACKGROUND

Plaintiff Pamela Rooney alleges that she developed triple negative breast cancer as a result of using Suave 24-Hour Protection Powder Aerosol Antiperspirant ("Suave antiperspirant") almost exclusively[1] for ten years that contained benzene, a known carcinogen. Suave antiperspirant is manufactured, advertised, and sold by defendant Unilever. In support of their allegations, plaintiffs' second amended complaint relies upon a report by Valisure, included within a Citizen Petition requesting that the Food and Drug Administration take regulatory

---

[1] Plaintiffs' original complaint alleged that Pamela Rooney had used Suave antiperspirant exclusively for ten years. However, plaintiffs amended their complaint to state that her usage of Suave was "almost exclusive" because the allegation was inconsistent with representations made by plaintiffs in a parallel suit in another section of this court, alleging that Pamela Rooney's breast cancer was caused by her use of Procter & Gamble's Secret antiperspirant. See, Rooney v. The Procter and Gamble Co., Civ. Action No. 22-1164 (R)(1)(Vance, J.).

action with respect to antiperspirant body sprays.[2] Valisure is an analytical pharmacy and consumer protection organization, which concluded that certain lots of antiperspirant, including lots made by Suave (among other brands), contained benzene which has been determined to cause cancer. Plaintiffs further allege that they possess several partially-used cans of Suave antiperspirant from the contaminated lots, which Pamela Rooney used over the years. Plaintiffs contend that Pamela Rooney's triple negative breast cancer was directly and proximately caused by exposure to the Suave antiperspirant. She has sued Unilever for violations of the Louisiana Products Liability Act, La. R.S. 9:2800.51 et seq. ("LPLA"), negligence, gross negligence, strict liability, and fault.  Her husband, Patrick Rooney, alleges a loss of consortium. In passing, plaintiffs suggest that they also seek injunctive relief.

     Unilever has filed the instant motion to dismiss, arguing that plaintiffs' complaint should be dismissed because it does not adequately allege that Pamela Rooney was exposed to benzene via a Suave product, or that if such exposure occurred, it caused Pamela Rooney's triple negative breast cancer. Unilever argues that Patrick Rooney's loss of consortium claim is derivative of the products liability claim and thus must also fail. Unilever also argues that the Rooneys' non-LPLA claims are not cognizable, and that the Rooneys lack standing to pursue a claim for injunctive relief. Plaintiffs have filed an opposition solely addressing the LPLA arguments. In their opposition, plaintiffs alternatively seek leave to amend their complaint to address any deficiencies. Because the opposition did not indicate the nature of the additional factual allegations they would add, the court ordered them to file a supplement to their opposition

---

[2] Valisure Citizen Petition on Benzene in Body Spray Products, Rec. Doc. 25-2.

setting forth any such facts. No supplement has been filed.

## II. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, 'enough facts to state a claim for relief that is plausible on its face' must be pleaded." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 550 U.S. 544 (2007). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 555 (citations omitted). The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 556 U.S. at 678.

In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). However, the district court "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are

central to a plaintiff's claims." Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp., 748 F.3d 631, 635 (5th Cir. 2014).

## B. Louisiana Products Liability Act

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." LA. REV. STAT. § 9:2800.52. Under the LPLA, a manufacturer of a product is "liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when the damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." Id. at § 9:2800.54. To prevail on a LPLA claim, a plaintiff must prove: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. Jefferson v. Lead Industries Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir. 1997) (citing generally J. Kennedy, A Primer on the Louisiana Products Liability Act, 49 LA. L. REV. 565 (1989)); La. Rev. Stat. § 9:2800.54.

Liability may be imposed when a product is found to be unreasonably dangerous in (1) construction or composition, (2) design, (3) inadequate warning or (4) nonconformity with an express warranty. LA. REV. STAT. §§ 9:2800.55, 9:2800.56, 9:2800.57, 9:2800.58. In this case, plaintiffs allege that Unilever caused their damages by failing to warn of the presence of benzene in Suave antiperspirant. "To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing

characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 264 (5th Cir. 2002). A plaintiff must also show that the plaintiff's injury was proximately caused by the failure to warn of the damage-causing characteristic of the product. See id. at 266.

### III. ANALYSIS

*A. LPLA claims*

To survive Unilever's motion to dismiss, plaintiffs must adequately allege all the elements required to prove a LPLA failure-to-warn claim. Thus, plaintiffs' complaint must include plausible allegations that Pamela Rooney was actually exposed to benzene via Suave antiperspirant, and that this exposure proximately caused her injury, triple negative breast cancer, due to Unilever's failure to warn of the presence of benzene in the product.

**1. Exposure allegations**

Plaintiffs' second amended complaint alleges that testing performed by a third-party entity, Valisure, found that certain lots of Suave antiperspirant (as well as some lots of products made by other manufacturers) contained benzene in amounts above the allowable FDA concentration limit of 2 parts per million. Plaintiffs further allege that cans in their possession containing benzene that were used by Pamela Rooney in the weeks, months, and years leading up to her cancer diagnosis came from the same batches of the product tested by Valisure.

The Valisure report provides results of its benzene analyses identifying the

antiperspirants tested by both Universal Product Code ("UPC") and lot number.[3] The UPC code identifies a specific product, and the lot number references the actual batch of product tested. To conclusively find that one of the products tested by Valisure contains benzene, it must come from the same batch or lot as that tested by Valisure. However, as pointed out by Unilever, and as determined in the Rooneys' parallel litigation in another section of this court, the numbers pointed to by the Rooneys as evidence that Pamela Rooney used antiperspirant from a benzene-adulterated lot, are not lot numbers, but UPN numbers.[4] They do not establish that the antiperspirant used by Pamela Rooney was from a lot containing benzene, but only that it was in fact a six-ounce can of Suave 24-Hour Protection Powder Aerosol antiperspirant.[5]

The analytical findings in the Valisure report reflect that while some batches of Suave contained benzene, other batches of Suave had no detectable levels of benzene.[6] "[M]any of the body spray products Valisure tested did not contain detectable levels of benzene".[7] In addition,

---

[3] The court considers documents attached to either a motion to dismiss or an opposition to that motion when they are referenced in the pleadings and are central to a plaintiff's claims. Brand Coupon Network, 748 F.3d at 635.

[4] Rooney v. Procter & Gamble Co., No. CV 22-1164, 2023 WL 1419870, at *4 (E.D. La. Jan. 31, 2023) (Vance, J.).

[5] It also raises the question why, considering that it was established as of January 31, 2023 that the UPN numbers merely identified the product but did not link the product cans to specific lot numbers, plaintiff persists in arguing that the UPN numbers are relevant, and makes no effort to come forward with actual lot numbers in the opposition to the instant motion, filed nearly two months later. See, Rooney, 2023 WL 1419870, at *4.

[6] Rec. Doc. 25-2, 12-17.

[7] Id. at 2.

"[t]here was significant variability from batch to batch, even within a single brand."[8] Testing by Valisure of Secret antiperspirant, another brand which Pamela Rooney used, reflected that some lots of Secret contained benzene in excess of allowable concentrations, while others did not. Because plaintiffs' own allegations acknowledge that not all lots of Suave antiperspirant contain impermissible concentrations of benzene (or any benzene at all), plaintiffs cannot plausibly allege that because Pamela Rooney used Suave antiperspirant, she more likely than not was exposed to benzene from that product. Thus, accepting as true the allegations of the complaint, plaintiffs do not plausibly allege that Pamela Rooney was exposed to benzene by using Suave antiperspirant.

**2. Causation allegations**

Plaintiffs allege that "[d]efendant's inadequate warnings or instructions with respect to Suave [that it contained impermissibly high levels of benzene] were the direct and proximate cause of Plaintiffs' harm, damages, and economic losses."[7] This conclusory allegation, standing alone, is insufficient to allege the causation element required by the LPLA. The second amended complaint also alleges that "[t]he U.S. Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs."[8] In addition, "[l]ong-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red

---

[8] Id. at 9.

[7] 2nd Amd Cmplt., Rec. Doc. 20. ¶ 50.

[8] Id. at ¶ 28.

blood cells, leading to anemia. It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection."[9] Accepted as true, these factual allegations allege a link between benzene and blood cancers and disorders. They do not suggest a link between benzene and triple negative breast cancer. As Judge Vance observed in her order dismssing plaintiff's parallel claims against Procter and Gamble, the manufacturer of Secret antiperspirant, "[p]laintiffs' 'failure to allege facts showing a causal connection between [Rooney's] injury' and defendant's allegedly inadequate warning renders plaintiffs' claim implausible." Rooney, 2023 WL 1419870, at *4  (E.D. La. Jan. 31, 2023) (quoting Watson v. Bayer Healthcare Pharms., Inc., 2013 WL 1558328, at *55 (E.D. La. Apr. 11, 2013) (dismissing LPLA inadequate warning claim where plaintiff failed to plausibly allege that her injury was among the risks posed by defendant's medical device), and comparing with Baudin v. AstraZeneca Pharms. LP, 413 F. Supp. 3d 498, 507 (denying defendant's motion to dismiss when plaintiff alleged that he developed gastric cancer after using Nexium and included "allegations regarding the scientific support for the link between Nexium and gastric cancer")). Because plaintiffs have not plausibly alleged facts supporting essential elements of a failure-to-warn claim, namely, exposure to an unreasonably dangerous characteristic of a product and damages resulting from the dangerous characteristic, plaintiffs' LPLA claim must be dismissed.

**B. Loss of Consortium claim**

The LPLA defines "damage" as "all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow

---

[9] Id. at ¶ 29.

recovery." Civil Code article 2315(B) specifically provides for loss of consortium damages. Thus, Patrick Rooney's loss of consortium loss of consortium claims are derivative of the LPLA claims. Because the underlying LPLA claims fail, the derivative loss of consortium claim must also be dismissed. See, In re Xarelto (Rivaroxaban) Prod. Liab. Litig., 2021 WL 4206936, at *8 (E.D. La. Sept. 16, 2021).

### C. Non-LPLA claims

In addition to their LPLA claims, plaintiffs have sued Unilever for negligence, gross negligence, strict liability, and fault, violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 351(a)(1), and misleading and deceptive advertising. However, remedies under the LPLA are exclusive, and a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the LPLA." LA. REV. STAT. § 9:2800.52. In addition, no private cause of action exists for violations of the Federal Food, Drug, and Cosmetic Act. Vesoulis v. ReShape LifeSciences, Inc., 2022 WL 989465, at *4 (5th Cir. Apr. 1, 2022) (citing Morris v. PLIVA, Inc., 713 F.3d 774, 778 (5th Cir. 2013); 21 U.S.C. § 337)). Finally, the court notes that plaintiff's opposition includes no counter-argument to the dismissal of these claims, and the court thus considers the dismissal of these claims unopposed. Therefore, all of plaintiffs' non-LPLA claims are dismissed.

In sum, plaintiffs' sole cognizable claims brought under the LPLA fail because plaintiffs have not adequately alleged elements required to state such a claim.

### D. Request for Injunctive Relief

While plaintiffs' prayer for relief does not explicitly seek injunctive relief, the second

amended complaint alleges: "Plaintiff may be harmed again because she wants to purchase the Product in the future; however, without injunctive relief Plaintiff would not be able to know or trust that Defendant will truthfully and legally label the Product and would be likely misled again."[10]  A plaintiff has standing to pursue an injunction when there is a "real and immediate threat of future injury" that is not merely conjectural. K.P. v. LeBlanc, 627 F.3d 115, 122–23 (5th Cir. 2010) (quoting City of L.A. v. Lyons, 461 U.S. 95, 107 n .8 (1983)). Thus, "in order to have standing to seek injunctive relief, plaintiffs must demonstrate that they are likely to suffer future injury by the defendant." Id. at 123. In this case, Unilever discontinued the product in fall of 2021, so there is no possibility of future injury to Pamela Rooney from the product. Accordingly, any claim for injunctive relief is dismissed for lack of standing.

E. *Leave to Amend*

Plaintiffs request that if the court grants defendant's motion to dismiss, they be given leave to amend their complaint. Defendant opposes allowing amendment, arguing that amendment would be futile.

Under Federal Rule 15(a)(2), "a party may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." The court has discretion on whether to grant or deny leave to amend. Union Planters Nat. Leasing, Inc. v. Woods, 687 F.2d 117, 121 (5th Cir. 1982). In deciding whether to grant leave to file an amended pleading under Rule 15(a), a district court may consider factors such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure

---

[10] 2nd Amd Cmplt, Rec. Doc. 20, ¶ 38.

deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. Id.

In this case, the court has allowed plaintiffs to amend their complaint twice. Despite these opportunities to amend, plaintiffs have not been able to cure the deficiencies identified. In fact, the specific defect regarding the distinction between UPC numbers and lot numbers challenged in the instant motion was brought to their attention months ago in the Procter and Gamble case, and yet plaintiffs' opposition in this case fails to address it. Affording plaintiffs the benefit of the doubt, the court in this case directed plaintiffs to file a supplement by April 19, 2023 setting forth more explicitly the additional facts alluded to in their opposition. Over a week beyond that deadline has elapsed, and no supplement has been filed. Considering the plaintiffs' inability to adequately plead after multiple opportunities to do so and an explicit invitation from the court to supplement the opposition to the instant motion, the court finds that allowing plaintiffs to amend their complaint for a third time would be futile.[11] Therefore, plaintiffs' claims are dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the **Motion to Dismiss Second Amended and Supplemental Complaint** (Rec. Doc. 25) filed by defendant Unilever United States, Inc. is **GRANTED**, and plaintiff's claims are hereby **DISMISSED** with prejudice.

---

[11] The court notes that in parallel litigation in another section of this court, asserting identical causes of action against another antiperspirant manufacturer, plaintiffs' claims were dismissed after having been given three opportunities to amend, and the court determined further amendment would be futile. See Rooney v. Procter & Gamble Co., 2023 WL 1419870, at *5.

New Orleans, Louisiana, this  28th  day of April, 2023.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**